United States District Court
Southern District of Texas
**ENTERED**
July 29, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ABRIAN B. NELSON AND ROSE M. NELSON, | § § § | |
| *Plaintiffs*, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:23-cv-01793 |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | § § § | |
| *Defendant*. | § § § | |

## ORDER

This is an insurance dispute. Defendant Allstate Vehicle and Property Insurance Company ("Allstate") filed a Motion for Partial Summary Judgment (Doc. No. 11) seeking dismissal of several causes of action brought by Plaintiffs Abrian and Rose Nelson ("Plaintiffs" or "the Nelsons"). For the reasons articulated below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Allstate's Motion. (Doc. No. 11). Plaintiffs are granted leave to amend their complaint within 14 days.

### I.     Background

The Nelsons submitted a claim to their homeowner's insurance provider, Allstate, after they suffered roof damage during a 2022 hailstorm. Plaintiffs claim that the storm caused significant damage to their roof, including pitting, tearing, and loss of granules to the shingles. (Doc. No. 1 at 2). In July 2022, Allstate conducted an inspection of the property and Plaintiffs were ultimately denied coverage for a roof replacement. (*Id.*). Plaintiffs allege that Allstate's inspection was unreasonable, brief, and that Allstate's denial of their claim was wrongful. (*Id.*). Plaintiffs further allege that "Allstate failed to property qualify, train, and supervise its employees

and agents to whom Allstate entrusted the handling of various portions of insureds' claim." (*Id.* at 3).

Plaintiffs also make broader allegations about Allstate's relationship with McKinsey & Company ("McKinsey"). Plaintiffs allege that McKinsey was hired to "redesign" Allstate's claim system and, in essence, make it more difficult for policyholders to receive a fair amount for their claims. Plaintiffs allege that Allstate implemented McKinsey's claim handling system to "increase its profits at plaintiffs' expense." (Doc. No. 1 at 6). Additionally, Plaintiffs complain that Allstate's "Claims Core Process Redesign" program ("CCPR") artificially reduced claim payments "in a manner that maximized shareholder profits and compromised the fair handling of plaintiffs' claims." (*Id.* at 7). Ultimately, Plaintiffs allege that "the goals, processes, and procedures left over from the CCPR program have been used to deny the plaintiffs' claim in a deceptive, fraudulent, oppressive, and malicious manner." (*Id.* at 14).

Abrian Nelson and Rose Nelson were both deposed. Allstate now moves for partial summary judgment on all but Plaintiffs' breach of contract and Tex. Ins. Code §542 prompt payment claim based on statements made in the Nelsons' respective depositions. Allstate argues that Plaintiffs' statements amount to judicial admissions meriting summary judgment in Allstate's favor on Plaintiffs' various common law fraud and bad faith claims. (Doc. No. 11 at 2). Plaintiffs respond that only "deliberate, clear, and unequivocal" statements may be considered judicial admissions and offer two unsworn declarations to "clarify" their deposition testimony. (Doc. No. 14 at 3). In its reply, Allstate objects to Plaintiffs' unsworn declarations as "sham affidavits" and urges this Court to find that the Nelsons' statements at their depositions are binding formal concessions that negate any issue of material fact as to the bad faith, deceptive insurance practices,

2

common law fraud, fraud by nondisclosure, and fraud in the sale of an insurance policy claims. (Doc. No. 16).

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.   Evidence objections

The Court will first consider the various evidence objections lodged by Allstate. In their response to Allstate's motion for partial summary judgment, Plaintiffs offer two unsworn declarations "clarifying" their previous deposition testimony. An unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). An exception to this rule exists under 28 U.S.C. § 1746, "which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made under penalty of perjury and verified as true and correct." *Id.* (citing 28 U.S.C. § 1746) (internal quotation marks omitted). Both unsworn declarations provided by Plaintiffs comply with the requirements of § 1746. Nonetheless, Allstate objects that the declarations should be excluded in their entirety because they directly contradict the declarants' prior deposition testimony and, as such, constitute sham affidavits. In the alternative, Allstate argues that certain statements in the affidavits should be stricken because they are "conclusory, contain unsupported assertions, factual conclusions and are unsupported by competent facts." (Doc. No. 16 at 4).

Under the sham affidavit doctrine, a district court "may refuse to consider statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019). The sham affidavit rule is only appropriate where an affidavit "directly contradicts prior testimony." *Id.* (citations omitted). Indeed, "not every discrepancy in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence." *Id.* (citation omitted) (internal quotation marks omitted). "Generally, in considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement." *Id.* (citation omitted) (internal quotation marks omitted).

Allstate argues that the affidavits submitted by the Nelsons were expressly made to contradict their sworn deposition testimony. At his deposition, Abrian Nelson testified as follows:

> Q: […] So when you moved in, why did you go with Allstate, do you remember?
> A: Probably because it was offering a better deal at the time.
> Q: Let's see. All right. It sounds like you just went with them because of price. Nobody sold you on anything?
> A: No. It was price.

(Doc. No. 11-1 at 14:12-15; 15:12-15).

> Q: Okay. Does the term closed file review mean anything to you?
> A: Not really.
> Q: What about Claims Core Process Redesign? Do you know anything about that?
> A: No.
> Q: McKinsey slides. Do you know anything about that?
> A: No.
> Q: Have you ever heard of McKinsey slides before?
> A: No.

(Doc. No. 11-1 at 44:18-45:04).

Later in the deposition, he made the following statements:

> Q: Right. I mean, this paragraph here: After Allstate implemented CCPR in '95, Allstate surplus skyrocketed from 6 and a half billion to 16.8 billion. You don't have any personal knowledge of any of that?
> A: No.
> Q: You don't even know what they are talking about there, right?
> A: Well, I know what they are talking about. As far as having any type of background knowledge on it, no. I can understand.
> Q: Yeah. You can understand what they wrote. But you don't, as far as your experience here, you don't have any kind of knowledge or anything like that about this issue.
> …
> A: Could you restate the question again?
> Q: Yes, sir. I know that you're a smart man. You can read this and understand it. But none of this stuff is coming from your background or personal knowledge?
> A: That is correct.

(Doc. No. 11-1 at 47:15-48:13).

In his unsworn declaration, Abrian Nelson states the following:

1.  Price was the main factor in my decision to purchase insurance from Allstate. Allstate did not lie to me about the price of the homeowner insurance. However, after deciding to pursue my insurance claim through litigation, I discovered information about Allstate's

claims handling program that was in place when I purchased my policy. Allstate did not tell me about this claims handling program when I purchased my insurance policy. If I had known about CCPR (Allstate's Core Claims Process Redesign Program) when I purchased my insurance policy, then I would not have purchased the insurance policy.

(Doc. No. 14-1 at 1).

The Court finds that the portion Nelson's statement in paragraph 1 beginning with the third sentence ("However, after deciding to pursue…") and ending at the conclusion of the paragraph directly contradicts his prior deposition testimony and strikes that portion of the affidavit as sham testimony.

Abrian Nelson further states:

At my deposition, I stated that I believed that Allstate did not honor its contract with me. To me, that meant that Allstate promised to pay for my covered repairs when I purchased my insurance policy and that Allstate lied about that promise.

(*Id.*).

This paragraph directly contradicts his deposition testimony, in which he explicitly testified that "I don't think [Allstate] lied to me." The Court strikes Paragraph 3 of Abrian Nelson's unsworn declaration as sham testimony.

Abrian Nelson concludes his unsworn declaration with the following paragraph:

At my deposition, I told Mr. Taylor that I knew about the CCPR program that was referenced in my interrogatory answers. Mr. Taylor never asked me if Allstate told me about that program when I purchased my insurance policy. Mr. Taylor did not ask me anything else about CCPR. Therefore, I did not intend for any of my answers regarding "lies" to apply to CCPR.

(*Id.*).

This directly contradicts Nelson's deposition testimony (detailed above), in which he stated that he had no personal knowledge of CCPR. The Court strikes Paragraph 4 of Abrian Nelson's unsworn declaration as sham testimony.

Finally, Allstate objects to Paragraph 2 of Abrian Nelson's unsworn affidavit. That paragraph reads as follows:

> At my deposition, Mr. Taylor, Allstate's attorney, asked me if I thought anyone at Allstate had lied to me to get me to purchase insurance. I interpreted this question to mean whether anyone at Allstate had verbally told me something that convinced me to purchase an insurance policy from them. The only verbal statement anyone made to me concerned the price of the insurance policy that would cover my home for damage. Again, I did not interpret Mr. Taylor's question as including important information that I was not told which may have affected my decision to purchase the insurance policy. My deposition testimony regarding any "lie" that Allstate told me was intended to be limited to any verbal statements Allstate made to me that I had reason to believe were untrue at the time I purchased the insurance policy. I made the statement for the purpose of showing that no person at Allstate verbally told me something, false or otherwise, that convinced me to purchase an insurance policy from Allstate. I did not intend my testimony to imply that Allstate did not deceive me in any manner when I purchased my insurance policy or at any other time.

(Doc. No. 14-1 at 1).

This paragraph provides additional context to Abrian Nelson's testimony at his deposition and does not necessarily represent a reversal. "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). The Court declines to strike Paragraph 2 of Abrian Nelson's unsworn declaration (Doc. No. 14-1 at 1) and will consider this testimony when evaluating the issues in this motion for partial summary judgment.

In Rose Nelson's unsworn declaration (Doc. No. 14-2), she states the following:

> I heard Mr. Nelson's deposition testimony during his deposition. Allstate's attorney did not ask Mr. Nelson any specific questions about CCPR or how CCPR operated. I knew nothing about CCPR (Allstate's Core Claims Process Redesign Program) either before or immediately after my husband purchased the insurance policy. I learned about CCPR later. However, if I had known about CCPR and about how CCPR would affect any insurance claim we would file during the policy period, then I would have advised my husband against purchasing the insurance policy from Allstate.

When asked about CCPR at her deposition, Rose Nelson responded as follows:

Q: All right. So all those same kind of questions about McKinsey claims, Core Process Redesign, you don't know anything about that stuff?
A: No.

(Doc. No. 11-2 at 8:18-21).

Paragraph 2 of Rose Nelson's unsworn affidavit is directly contradictory to her deposition testimony and the Court therefore strikes that testimony under the sham affidavit doctrine. The Court will accordingly disregard any statements offered in Rose and Abrian Nelson's unsworn declarations that the Court has found constitutes "sham affidavit" evidence.

## IV.    Analysis

As noted previously, the Nelsons assert claims for bad faith (breach of the duty of good faith and fair dealing), breach of contract, deceptive insurance practices, late payment of claims, common law fraud, fraud by nondisclosure, and fraud in the sale of an insurance policy against Allstate based on its denial of coverage and the broader allegations stemming from Allstate's relationship with McKinsey and the CCPR program.

Abrian and Rose Nelson were both deposed in this case. At Abrian Nelson's deposition, he testified as follows:

Q: Do you have any kind of problem with Allstate other than the fact that they haven't paid you for this claim yet?
A: No. I don't make claims unless there is an issue. I try not to make claims. That is why my deductible is so high because I don't make claims. It's like if something were to happen, I would just – I would probably just get it fixed. But in this situation, there was too much and that's the purpose of insurance. But no, I don't have nothing against Allstate or no other company. It's not a personal thing.

….

Q: All right. I know we talked earlier about Allstate. Other than the fact they haven't paid for this claim, you're not here to tell the jury that Allstate has lied to you to get you to buy insurance or anything like that, are you?

A: No. I don't think they lied to me. But I don't believe they have honored their contract with me.

Q. Right. And you believe that your roof was damaged and it should be covered under the policy and they need to pay that?

A. Yes.

Q. And that's kind of the extent of this conflict?

A. Yes.

(Doc. No. 11-1 at 42:17-43:04; 51:04-18).

Rose Nelson similarly testified as follows:

Q: And it sounds like you would agree with your husband that this issue is that Allstate hasn't already paid your claim?

A: Hasn't already? Yes.

Q: You're not saying Allstate is lying to you or trying to commit fraud or anything like that?

A: No.

(Doc. No. 11-2 at 08:22-09:03).

Allstate argues that Plaintiffs' statements amount to judicial admissions concerning Plaintiffs' various fraud and bad faith claims. (Doc. No. 11 at 2).

### A. Judicial Admissions

First, the Court must consider whether a statement made by party at a deposition can constitute a judicial admission under Fifth Circuit precedent. "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Id.* "A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party." *Id.* (citing *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)) (internal quotation marks omitted). "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it

conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (citation omitted) (internal quotation marks omitted).

At the outset, the Court finds that Abrian Nelson's first statement in his deposition ("Q: Do you have any kind of problem with Allstate other than the fact that they haven't paid you for this claim yet? A: No. I don't make claims unless there is an issue... I don't have nothing against Allstate or no other company. It's not a personal thing") is not "deliberate, clear, and unequivocal" such that it constitutes a judicial admission for any claim in this case.

Nevertheless, his answer to the question: "...you're not here to tell the jury that Allstate has lied to you to get you to buy insurance or anything like that, are you?" in which he replied: "No. I don't think they lied to me. But I don't believe they have honored their contract with me" is a deliberate, clear, and unequivocal statement that Allstate did not "lie."[1] For this statement to qualify as a judicial admission, it must be "contrary to a fact essential to a theory of recovery" and "about a fact on which a judgment for the opposing party can be based." To determine whether Nelson's statement meets these criteria, the Court will analyze each cause of action in turn.

### 1. Bad faith

The Nelsons' first cause of action is for bad faith, or breach of the duty of good faith and fair dealing, based on Allstate's alleged denial of their storm damage claim under the policy. "Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d

---

[1] Rose Nelson's statement at her deposition ("You're not saying Allstate is lying to you or trying to commit fraud or anything like that? A: No.") is also a deliberate, clear, and unequivocal statement that Allstate is not "lying" to the Nelsons. (Doc. No. 11-2 at 08:22-09:03).

456, 459 (5th Cir. 1997) (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987)).

> A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial. *Id.* In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex. 1988). The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. *State Farm Lloyds Inc. v. Polasek,* 847 S.W.2d 279, 284 (Tex.App.—San Antonio 1992, writ denied). However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. *St. Paul Lloyd's Ins. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex.App.— Houston [14th Dist.] 1991, writ denied) *(citing Aranda,* 748 S.W.2d at 213). A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim. *Id.* As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith. *Lyons v. Millers Casualty Insurance Co.,* 866 S.W.2d 597, 600 (Tex.1993).

*Higginbotham*, 103 F.3d at 459.

The fact that Allstate did not "lie" to Nelson is not a fact contrary to an essential theory of recovery on a bad faith claim; indeed, there is no requirement that the insurer "lies" to the insured to be liable for bad faith under Texas law. To sustain a cause of action for bad faith, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known that there was no reasonable basis for denying or delaying payment of the claim." *Id.* Nelson's statement does not constitute a judicial admission so as to negate the bad faith claim. The Court accordingly denies Allstate's motion for summary judgment as to that cause of action.

### 2. Deceptive Insurance Practices

Plaintiffs also bring a cause of action for "deceptive insurance practices" under several subsections of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA").[2] Several of the cited provisions of the Texas Insurance Code and the DTPA require material misrepresentations. *See* Tex. Ins. Code §§ 541.060(a)(1), 541.061(1), 541.061(2), Tex. Bus. & Com. Code §§ 17.46(b)(12). Nelson's statement that Allstate did not "lie" to him negates the material misrepresentation requirement as to each of these claims, and as such constitutes a judicial admission. Allstate's motion for partial summary judgment is granted as to the Nelsons' claims under Tex. Ins. Code §§ 541.060(a)(1), 541.061(1), 541.061(2), and Tex. Bus. & Com. Code §§ 17.46(b)(12).

Nevertheless, Plaintiffs also allege that Allstate failed to affirm or deny coverage within a reasonable time, failed to conduct a reasonable investigation, failed to accept or deny plaintiffs' full and entire claim within the statutorily mandated time, and failed to communicate with Plaintiffs to "ensure that [P]laintiffs understood the coverage denials they received." (Doc. No. 1 at 18). These claims are brought under Tex. Ins. Code §§ 541.060(a)(2)(A), 541.060(a)(23), 541.060(a)(4)(A), and 541.060(a)(7). A material misrepresentation, or "lie," is not a fact essential to recovery under these provisions. As a result, Allstate's motion for partial summary judgment is denied as to Plaintiffs' claims under Tex. Ins. Code §§ 541.060(a)(2)(A), 541.060(a)(23), 541.060(a)(4)(A), and 541.060(a)(7).

### 3. Common law fraud claims

Plaintiffs further state causes of action for common law fraud, fraud by nondisclosure, and "fraud in the sale of insurance policy" based on Plaintiffs' allegations regarding the CCPR program

---

[2] Tex. Ins. Code § 541.060, Tex. Ins. Code § 541.061, Tex. Bus. & Com. Code § 17.46(b)(12).

and the "McKinsey slides."[3] Texas courts have "long recognized that fraud is an intentional tort." *Env't Packaging Techs., Ltd. v. Arch Ins. Co.*, No. 4:18-CV-00240, 2020 WL 3965992 at \*6 (S.D. Tex. June 11, 2020), *report and recommendation adopted*, No. 4:18-CV-00240, 2020 WL 3964038 (S.D. Tex. July 13, 2020), aff'd, 852 F. App'x 845 (5th Cir. 2021) (internal quotation marks and citation omitted).

A common law fraud finding "necessarily requires a deliberately/intentionally fraudulent act." *Env't Packaging Techs.*, 2020 WL 3965992 at \*6. "The elements of common law fraud are: (1) a material representation that was false when made; (2) when the representation was made, the speaker knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent that the other party should act upon it; (4) the party actually and justifiably relied on the representation; and (5) thereby suffered injury." *DiBello v. Charlie Thomas Ford, Ltd.*, 288 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

"Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005).

Abrian Nelson's statement that Allstate did not "lie" to him undermines two essential elements of common law fraud claims: that a false, material misrepresentation was made, and that the speaker knew it was false. This constitutes a judicial admission meriting summary judgment

---

[3] "Fraud in the sale of insurance policy" does not appear to be a cause of action distinct from common law fraud in Texas. The Court's analysis of common law fraud therefore applies to both claims.

in favor of Allstate as to the common law fraud and the "fraud in the sale of insurance policy" claims.

The Nelsons' fraud by nondisclosure claim is based solely on Allstate's failure to disclose the nature of the CCPR program to Plaintiffs prior to their purchase of the insurance policy. In Texas, a fraud by nondisclosure claim "requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent." *Id.* The Court has excluded the Nelsons' unsworn declaration statements regarding the CCPR program as "sham affidavit" testimony. The Court credits Abrian Nelson's deposition testimony that price was the sole motivating factor in selecting his Allstate insurance policy. (Doc. No. 11-1 at 15:12-15). He further admitted that he does not have any personal knowledge of the CCPR program. (*Id.* at 47:15-48:13). These statements, taken in context with Abrian Nelson's statement that Allstate did not "lie" to him, are contrary to an element essential to recovery on his fraud by nondisclosure claim (i.e., that the Nelsons actually and justifiably relied on the alleged misrepresentation or nondisclosure regarding the CCPR program).[4]

In sum, the Court finds that the Nelsons' statements at their depositions[5] are contrary to facts essential to recovery on their common law fraud claims (common law fraud, fraud by nondisclosure, and "fraud in the sale of insurance policy"). As such, and because the Court has previously found that they are clear, deliberate, and unequivocal, these statements constitute judicial admissions. Allstate's motion for partial summary judgment is granted as to Plaintiffs' common law fraud claims.

---

[4] Abrian Nelson's statement in his unsworn declaration that "I did not intend my testimony to imply that Allstate did not deceive me in any manner when I purchased my insurance policy or at any other time" is not enough to raise a genuine issue of material fact negating his prior judicial admissions.

[5] Abrian Nelson: "No, I don't think [Allstate] lied to me." (Doc. No. 11-1 at 51:04-18). Rose Nelson: "Q: You're not saying Allstate is lying to you or trying to commit fraud or anything like that? A: No." (Doc. No. 11-2 at 08:22-09:03).

## V.      Conclusion

The Court **grants** Allstate's motion for partial summary judgment on Plaintiffs' common law fraud claims (common law fraud, fraud by nondisclosure, fraud in the sale of insurance policy), and Plaintiffs' claims under Tex. Ins. Code §§ 541.060(a)(1), 541.061(1), 541.061(2), and Tex. Bus. & Com. Code §§ 17.46(b)(12). The Court **denies** Allstate's motion for partial summary judgment on Plaintiffs' claims for bad faith and Plaintiffs' claims under Tex. Ins. Code §§ 541.060(a)(2)(A), 541.060(a)(23), 541.060(a)(4)(A), and 541.060(a)(7). Allstate did not move for summary judgment on Plaintiffs' breach of contract and prompt payment claims (see Tex. Ins. Code § 542.057); accordingly, those claims remain. Plaintiffs are granted leave to amend their complaint within 14 days.

Signed this __25__ day of July 2024.

Andrew S. Hanen
United States District Judge

15